Nicholas SARNELLI

v.

**AMALGAMATED MEAT CUTTERS & BUTCHER WORKMEN OF NORTH AMERICA, AFL–CIO, LOCAL UNION #33, and Stop & Shop, Inc.**

Civ. A. No. 70–1435–C.

United States District Court,
D. Massachusetts.

Nov. 4, 1971.

David Burres, Burres, Shatz & Schwartz, Springfield, Mass., for plaintiff.

Arthur J. Flamm, Segal & Flamm, and Alvin M. Glazerman, Snyder, Tepper & Berlin, Boston, Mass., for defendants.

## OPINION

CAFFREY, District Judge.

This is a civil action in which plaintiff seeks an order of this court requiring that the propriety of his dismissal as an employee of defendant Stop & Shop, Inc. be submitted to arbitration and, also, money damages. Jurisdiction of this court is invoked on the basis of unspecified portions of the National Labor Relations Act and the Labor Management Relations Act. Plaintiff alleges that he is a resident of Massachusetts and was a member of Local #33, Amalgamated Meat Cutters & Butcher Workmen of North America, AFL–CIO. Defendants are Local #33, a labor organization representing employees in an industry affecting commerce within the meaning of 28 U.S.C.A. 301, and Stop & Shop, Inc., operator of a chain of retail supermarkets, one of which is located in West Springfield, Mass.

The case was tried to the court. At the conclusion of the plaintiff's case, both defendants filed motions for judgment in their favor. On the basis of all the evidence adduced on direct and cross-examination, the case was taken under advisement. I find and rule as follows:

On July 20, 1970, plaintiff, Nicholas Sarnelli, was employed as a meatcutter by defendant Stop & Shop. He was on duty on a shift running from 5:00 to 9:00 p. m. at the Stop & Shop supermarket in West Springfield. At approximately 8:15 p. m., the acting store manager, Mr. Van Mourik went to a platform at the rear of the store for the purpose of disposing of certain bakery waste materials into a "dumpster." While out on the platform he observed the plaintiff placing a box on the platform behind the meat counter. I find that it was approaching dusk, that it was not dark, and that the area was illuminated by electric lights. I find that Van Mourik was accompanied in the platform area by one Asselin, who was an employee of the West Springfield supermarket who was not on duty that evening but who had gone to the store to socialize with Van Mourik and who was assisting Van Mourik in emptying excess bakery products into the dumpster. As acting store manager Van Mourik had supervis-

ory authority over plaintiff. Upon observing plaintiff placing the box of meat on the dock, Van Mourik sent Asselin in to get a meat key and when Van Mourik approached plaintiff, plaintiff, in response to a demand, removed the meat key from his pocket and gave it to Van Mourik. Van Mourik also testified that he saw a blue car parked adjacent to the meat department end of the dock, that one man was seated behind the wheel of the car and another was standing at the rear of the car beside the open trunk. Van Mourik testified that he jumped down off the dock and ran toward the car in an attempt to get the registration plate number but that the car sped off so rapidly he was unable to do so. He testified that Asselin advised him that he recognized the men in the car as the same two men who had spent a substantial amount of time talking to Sarnelli in the store that same evening.

Immediately after this incident, Van Mourik telephoned the store manager who instructed him to inform Sarnelli that he was suspended and to direct Sarnelli to leave the store forthwith, which was done. An investigation was conducted by a security officer of Stop & Shop, in the course of which sworn statements were given by both Van Mourik and Asselin. Thereafter, Sarnelli called upon the Union to represent him in connection with his suspension and eventual discharge, and two Union officers, both of whom testified at the trial, proceeded to contact Stop & Shop executives with regard to the matter. The first was Richard Brazie, a business representative and Recording Secretary of Local #33. He testified that he was called by Stanley Dominick, the Secretary-Treasurer and a business representative of Local #33, to handle a case for him involving an employee of a store that normally would be within Dominick's jurisdiction for the reason that Dominick was scheduled to attend a meeting of several days duration in Washington. Brazie stated that he met Sarnelli at the Stop & Shop parking lot about half an hour before they were to

meet with representatives of Stop & Shop, that they did meet in the office of Mr. Collins, an industrial relations representative of Stop & Shop, and Ronald Besancon. The meeting lasted forty-five minutes. Collins advised Sarnelli that two men had seen him putting meat products out onto the platform. Sarnelli denied any involvement and stated that he had not been out on the platform all night. Brazie requested Collins to reinstate Sarnelli until his case was heard. Collins refused to do so. Brazie stated that he repeated his request for reinstatement after Sarnelli had left the meeting, and that he was shown statements of the witnesses Van Mourik and Asselin. Collins later made photostatic copies of the statements of the two witnesses available to Dominick who, in turn, showed the statements to Brazie. After the conference with Collins, plaintiff was terminated with Stop & Shop.

Both Dominick and Brazie testified that the statements convinced them that the witnesses had seen Sarnelli on the platform with meat products, and Dominick testified that he interviewed the two employees who gave the statements accusing Sarnelli, that both were members of a retail clerks' Union, and that both told him that what they had reduced to writing was true. Dominick also learned that Sarnelli was the only employee of the meat department in the store that night, although there was a sixteen year old boy at work in the delicatessen department adjacent to the meat department. Dominick testified that he interviewed Joseph Salino, Shop Steward for Local #33, at the Stop & Shop store, and that Salino indicated to him that the two affiants were good Union members, were trustworthy, and, as far as he was aware, had no axe to grind against Sarnelli.

Armed with the above-summarized information, and with the background information that Sarnelli had been accused of dishonesty on two prior occasions during his employment with Stop & Shop, on one of which charges he was "cleared" and on the other accepted a

three-day suspension when a charge of underpricing meat on a particular sale was reduced to a charge of insubordination after Dominick intervened in his behalf with management representatives, Dominick consulted with counsel for the Union, Arthur J. Flamm, Esq., who either advised Dominick not to carry the matter to arbitration or who concurred in Dominick's opinion that it was not an appropriate case for the Union to take to arbitration. Thereafter, Mr. Flamm received a letter from counsel for Sarnelli requesting that the Union take the appropriate action to preserve his right to go forward with arbitration, which was done. However, the Union having done this through Mr. Flamm, advised counsel for Sarnelli that the Union would not proceed with the matter save at the complete expense of Sarnelli. The instant litigation followed.

On the basis of what I find to be the credible evidence, in which I do not include the testimony of Sarnelli, I find that Dominick and Brazie conducted a reasonable investigation of the incident, that they had a basis in fact in the two affidavits of Van Mourik and Asselin to believe that Sarnelli was, in fact, engaged in purloining meat products from Stop & Shop, that they acted reasonably in consulting Mr. Flamm, an experienced and aggressive Union lawyer, as to whether or not they should proceed to arbitration on behalf of Sarnelli on the basis of the evidence available to them, and that there was no breach by Brazie, Dominick or any other representative of Local #33, or by Stop & Shop, of any obligation owed to Sarnelli under the collective bargaining agreement between the Union and Stop & Shop or under Sarnelli's contract of employment with Stop & Shop.

In sum, the question before this court is not whether in fact Sarnelli stole property of the Stop & Shop, but whether the representatives of Local #33 conducted a reasonable investigation in his behalf to determine whether or not to process his case to arbitration pursuant to the grievance procedures set out in the collective bargaining agreement between Stop & Shop and Local #33. A secondary issue involved herein is whether or not Stop & Shop had legally sufficient grounds to terminate Sarnelli's employment. I rule that on the evidence presented to this Court, the representatives of Local #33 made an adequate investigation of the incident of July 20, 1970, that they acted reasonably in believing that the affiants, Van Mourik and Asselin, were telling the truth, and they acted reasonably in believing that the matter could not be successfully arbitrated in the interests of Sarnelli. I further rule that neither the Union nor Stop & Shop management breached any obligation owing to Sarnelli.

Accordingly, the motions for judgment in favor of the defendants, Local #33 and Stop & Shop, are allowed.